UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRYAN R. HAWKINS,

                                          **DECISION AND ORDER**
          Petitioner,              **No. 11-CV-00172(MAT)**

     -vs-

ROBERT KIRKPATRICK


               Respondent.


_____

## I.   Introduction

     *Pro se* Petitioner Bryan R. Hawkins ("Petitioner") has filed a
timely petition for a writ of habeas corpus[1] under 28 U.S.C. § 2254
challenging the constitutionality of his custody pursuant to a
judgment entered June 24, 2003, in New York State, Supreme Court,
Monroe County, convicting him, after a jury trial, of two counts of
Murder in the Second Degree (N.Y. Penal Law ("Penal Law")
§§ 125.25[2], [3]) (depraved indifference murder and felony
murder), and Burglary in the Second Degree (Penal Law § 140.25[2]).

## II.  Factual Background and Procedural History

     On November 27, 2002, at approximately 2:00 p.m., 911 operator
Jennie Orum ("Orum") received an emergency call from 1782 Westside
Drive in the Town of Gates, Monroe County.   Thomas Gallina
("Gallina" or "the victim"), who was on the other end of the call,

---

[1]

     On or about March 2, 2011, Petitioner filed his habeas corpus petition.
Dkt. No. 1.  Subsequently, he moved to amend the petition (Dkt. No. 9) and the
Court granted his unopposed request.   Dkt. No. 14.   On November 8, 2011,
Petitioner filed the instant amended habeas petition.   Dkt. No. 15.

asked for police assistance because a man with a hammer was trying to break into his home.  While Gallina was on the telephone with Orum, the intruder gained entry to Gallina's home through a rear door by breaking a window.  Orum testified that Gallina was "excited" when she spoke with him.  Gallina was heard on the taped 911 call yelling to the intruder, "[g]et the fuck outta here" and "[l]et go, let go, will ya go."  Trial Trans. [T.T.] 424-428, 549-550.  Police arrived at Gallina's home shortly after he placed the 911 call.  T.T. 436-37.

Officer Patricia Quigley of the Gates Police Department ("GPD") was the first to respond to the scene.  Officer Quigley observed tire tracks in the snow on a bend in Gallina's driveway and numerous footprints up to the multiple entrances to the house.  All of the footprints appeared to be the same size and were similar in appearance.  T.T. 431-436, 464-475.  The footprints were later determined to have been formed by Wolverine-brand work boots that were the same size and tread as those worn by Petitioner at the time of his arrest.  T.T. 502, 754-755, 777-778.  The tire tracks in the snow were later determined to be consistent with the type of tires on Petitioner's vehicle.  T.T. 787-789.

Officer Quigley approached Gallina's house from the rear and entered the home through the storm door.  She observed a small piece of wood and a small drop of blood by this door.  The inside door to the house appeared to have been kicked in and the glass in the door and a portion of the pane were broken.  Officer Quigley

discovered Gallina lying on the kitchen floor, moaning, with blood under his head.  Officer Quigley searched the home for additional victims or suspects, and found none.  T.T. 443-445.

Paramedic John Spalding ("Spalding") was the first medical personnel to arrive at the scene.  Upon entering the house, he saw Gallina in a bathrobe on the kitchen floor.  There was a "large pool of blood around his head" and "glass everywhere."  Spalding observed that Gallina's condition was "grave," as Gallina "had irregular respirations" and "depressed skull fractures in many areas."  As Spalding treated Gallina, his fingers "sunk into the back of [Gallina's] head."  Gallina was taken to Strong Memorial Hospital, where he later died from his head injuries.  T.T. 455-459.

GPD arrived at Gallina's home to assist in the investigation.  They discovered blood in a number of locations, and collected numerous samples.  DNA testing later revealed that the blood evidence obtained from the doorframe surrounding the door of apparent entry matched the DNA profile of Petitioner.  The possibility of another unrelated person having the same DNA profile was one in one-hundred seventeen quadrillion.  T.T. 876-883.  When questioned by the police, Petitioner denied knowing the victim and denied ever having being at the victim's home.  T.T. 743.

Shawn Hawkins, Petitioner's brother, and Raydeen Beckwith ("Beckwith"), a former friend of Petitioner's, testified that, on the day of the incident, Petitioner had an injury on his right

index finger.  Shawn Hawkins testified that Petitioner appeared distraught, and when he asked Petitioner how he sustained the injury to his finger, Petitioner told him that he had been bit by someone in a fight following a traffic accident.  Beckwith testified that she observed a cut on Petitioner's hand that went across his knuckles, and that Petitioner told her that the cut on his finger was the result of an injury at work caused by a machine.  T.T. 576-577, 590.

Dr. Caroline Dignan, then deputy medical examiner for the Monroe County Medical Examiner's Office, performed an autopsy on the victim.  She testified that Gallina died from blunt force trauma to the head.  Dr. Dignan testified that there were at least six separate lacerations to the victim's head, bilateral bruising of his eyes, and bruising to his forehead.  Some of the lacerations to the victim's head were so deep that they went through and into the skull, and brain matter was visible through one of the lacerations.  According to Dr. Dignan, the victim's scalp was hemorraged, the skull had multiple fractures, the dura was torn, there was extensive bleeding around the brain, and the brain itself was swollen.  Dr. Dignan was unable to determine what instrument caused the injuries because of surgical alteration at the hospital and some healing.  However, she opined that the injuries were caused by blunt force trauma which could have been inflicted by a hammer.  T.T. 912, 915-925.

At the close of the People's case, defense counsel made a general motion for trial order of dismissal, which was denied. T.T. 935, 938. The defense then rested without presenting any evidence. T.T. 943-944. Petitioner was found guilty as charged, and subsequently sentenced, as a persistent violent felony offender, to concurrent terms of 25 years to life for the two murder convictions, and a consecutive term of 25 years to life for the burglary conviction. T.T. 1043; Sentencing Mins. [S.M.] 39-40.

Petitioner appealed his judgment of conviction in the Appellate Division, Fourth Department, which was affirmed on February 8, 2008. People v. Hawkins, 48 A.D.3d 1279 (4th Dep't 2008) (Resp't Appendix B). Petitioner applied for leave to appeal, which was granted on March 31, 2008. See Resp't Appendix F. On November 25, 2008, the New York Court of Appeals unanimously affirmed Petitioner's conviction. People v. Hawkins, 11 N.Y.3d 484 (2008) (Resp't Appendix K).

On or about January 21, 2010, Petitioner filed a *pro se* application for a writ of error coram nobis alleging that he received ineffective assistance of appellate counsel. See Resp't App. Q. Petitioner's motion was denied on March 19, 2010, and Petitioner did not seek leave to appeal. See Resp't Appendix S.

On or about April 19, 2010, Petitioner filed a *pro se* motion, pursuant to CPL § 440.10, to vacate his judgment of conviction on the following grounds: (1) the evidence was legally insufficient to support the depraved indifference murder conviction; and

(2) ineffective assistance of counsel. <u>See</u> Resp't Appendix T. The motion was denied on July 27, 2010, and leave to appeal was denied. <u>See</u> Resp't Appendix Z.

The instant habeas corpus petition followed, wherein Petitioner seeks relief on the basis that: (1) the evidence was legally insufficient to support his conviction for depraved indifference murder; (2) ineffective assistance of counsel; (3) the prosecution failed to disclose certain materials prior to trial in violation of <u>Brady v. Maryland</u>;[2] (4) he was denied his Fourth Amendment due process rights to a full and fair direct appeal because the prosecution misstated the trial evidence in its brief on direct appeal; and (5) ineffective assistance of appellate counsel. <u>See</u> Amended Pet. [Am. Pet.], Grounds One-Five.

For the reasons that follow, habeas relief is denied and the petition is dismissed.

## III. Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir. 1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The

---

[2] 373 U.S. 83 (1963)

exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), <u>cert. denied</u>, 464 U.S. 1048 (1984).

## IV.  The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).

## V.  Analysis of the Petition

## 1.  Petitioner's Legal Sufficiency Claim is Unexhausted but Deemed Exhausted and Procedurally Defaulted

Petitioner argues that his due process rights were violated because the trial evidence was legally insufficient to establish his conviction of depraved indifference murder.  Specifically, he argues that the trial proof established an intentional murder and no other crime.  <u>See</u> Am. Pet., Ground One.  Respondent asserts that the claim is unexhausted because it was not properly raised in federal constitutional terms in the state courts.  <u>See</u> Resp't

Supplemental Mem. of Law at 11-12.   The Court agrees.   Because, however, Petitioner no longer has a state court forum in which to exhaust the claim, the Court deems it exhausted but procedurally defaulted from habeas review.

As set forth above, in order to seek habeas corpus relief in a federal court, a petitioner must have fairly presented the substance of his federal claims to the state courts for adjudication.   See 28 U.S.C. § 2254(b)(1)(A).   A petitioner must also fairly apprise the state courts that his claim possesses a federal dimension.   See Daye v. Attorney General, 696 F.2d 186, 192 (2d Cir. 1982).   Even without alleging the violation of a specific constitutional provision expressly, a petitioner may fairly present a federal constitutional claim to a state court by: "(a) [relying] on pertinent federal cases employing [federal] constitutional analysis, (b) [relying] on state cases employing [federal] constitutional analysis in like fact situations, © [asserting] the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [alleging] a pattern of facts that is well within the mainstream of [federal] constitutional litigation."   Daye, 696 F.2d at 194.

In this case, Petitioner raised the instant claim on direct appeal.   However, when he did so, he narrowly framed it as a state law issue.   Citing only state caselaw in support of his argument, he claimed that the evidence was legally insufficient to support his conviction for depraved indifference murder under the Court of

Appeals decisions in <u>People v. Gonzalez</u>, 1 N.Y.3d 464 (2004) and <u>People v. Payne</u>, 3 N.Y.3d 266 (2004), and the Fourth Department's decision in <u>People v. Lawhorn</u>, 21 A.D.3d 1289 (2005).  Moreover, when he raised this claim in his brief in the New York Court of Appeals, he relied on the exact same arguments and state caselaw offered in his brief in the Appellate Division.  <u>See</u> Resp't Appendix I.  The Court finds that the manner in which Petitioner raised this claim was insufficient to apprise the state courts that his legal sufficiency claim possessed a federal constitutional dimension.  Consequently, Petitioner's claim remains unexhausted.

When claims have not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies when "it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001); <u>Robinson v. Superintendent, Green Haven Correctional Facility</u>, No. 09-CV-1904, 2012 U.S. Dist. LEXIS 5244, 2012 WL 123263, at *4 (E.D.N.Y. Jan. 17, 2012) (citing <u>Aparicio</u>).  Here, Petitioner already used his one appeal to the Appellate Division, and collateral review of this claim by way of another motion to vacate is also foreclosed.  <u>See</u> N.Y. Ct. Rules § 500.20(a) (permitting the filing of only one direct appeal and one application for leave to appeal to the Court of Appeals);  CPL § 440.10(2)(a), (c) (motion to vacate must be denied where claim is record-based and was denied on the merits on direct appeal or could

have been raised on direct appeal but unjustifiably was not). Thus, it would be futile for Petitioner to return to state court to exhaust this claim and the Court therefore deems it exhausted but procedurally defaulted from habeas review.

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for his procedural default and resulting prejudice or, alternatively, that a fundamental miscarriage of justice would occur absent federal court review of the claims. Acosta v. Artuz, 575 F.3d 177, 184 (2d Cir. 2009) (citation omitted); Smith v. Fischer, No. 07 CIV. 2966, 2012 U.S. Dist. LEXIS 29010, 2012 WL 695432, at *16 (S.D.N.Y. Mar. 5, 2012) (citations omitted). To establish legal "cause" which would enable this Court to consider Petitioner's procedurally forfeited claim, he must show that some objective, external factor impeded his ability to fully exhaust it. See Eckhardt v. Superintendent, Attica Correctional Facility, No. 9:04-CV-0559 (GLS/GHL), 2008 U.S. Dist. LEXIS 118609, 2008 WL 8156688, at *7 (N.D.N.Y. Mar. 25, 2008); Doleo v. Reynolds, No. 00 CIV.7927, 2002 U.S. Dist. LEXIS 8090, 2002 WL 922260, at *3 (S.D.N.Y. May 7, 2002). Ineffective assistance of counsel may establish cause for the default. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). Petitioner has not expressly asserted ineffective assistance of trial counsel as cause for the default, but he does raise a stand-alone ineffective assistance of counsel claim on this basis in the petition and the Court liberally

construes this as an attempt to show cause.  A petitioner, however, may not properly assert an ineffective assistance claim as cause excusing a procedural default, when, as here, that claim is itself procedurally barred (see discussion *infra* at section V, 2).  See Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) ("a petitioner may not bring an ineffective assistance claim as cause for a default when that ineffective assistance claim itself is procedurally barred") (citation omitted); see also Tucker v. Artus, No. 07 CIV. 10944, 2011 U.S. Dist. LEXIS 152457, 2011 WL 7109332, at *14 (S.D.N.Y. Dec. 12, 2011).  Petitioner has therefore failed to establish cause for the default.  Since petitioner has not established that legal cause exists which excuses his procedural defaults, this Court need not consider whether he has suffered the requisite prejudice because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless the petitioner demonstrates both cause and prejudice.  See Stepney v. Lopes, 760 F.2d 40, 45 (2d Cir. 1985); Collazo v. Lee, No. 11 CIV. 1804, 2011 U.S. Dist. LEXIS 138825, 2011 WL 6026301, at *3 (E.D.N.Y. Dec. 2, 2011) (finding that because petitioner "failed to show 'cause' for his procedural default, this Court does not need to determine whether he suffered prejudice because relief is unavailable unless both cause and prejudice have been established") (citing Stepney).  Moreover, Petitioner has not asserted that he is actually innocent of the crime, or otherwise alleged facts to avail himself of the

miscarriage of justice exception. See generally Sawyer v. Whitley, 505 U.S. 333, 339 (1992) ("The miscarriage of justice exception is concerned with actual as compared to legal innocence.").

Accordingly, Petitioner's legal sufficiency claim is procedurally defaulted from habeas review and is denied on that basis.

**2. Petitioner's Ineffective Assistance of Trial Counsel Claims Are Procedurally Defaulted and Meritless**

Petitioner argues, as he did in his CPL § 440.10 motion, that he received ineffective assistance of trial counsel based on counsel's failure to: (1) properly preserve Petitioner's argument that the evidence was legal sufficiency insufficient to support his conviction for depraved indifference murder; and (2) object to, or move for sanctions for, the prosecution's alleged failure to disclose materials from the GPD related to the collection of biological evidence and technician functions. See Am. Pet., Ground Two. As discussed below, the former claim is procedurally barred from habeas review by an adequate and independent state ground, and the latter claim is meritless and does not warrant habeas relief.

**(A) Petitioner's Ineffective Assistance of Counsel Claim Based on Counsel's Failure to Properly Preserve the Legal Sufficiency Issue is Procedurally Defaulted**

Petitioner argues, as he did in his CPL § 440.10 motion, that he received ineffective assistance of trial counsel because counsel failed to properly preserve his legal sufficiency argument for appellate reivew. See Am. Pet. at p 10, ¶¶ 34-37. The Monroe

County Supreme Court denied this claim, adopting the People's position in its Answering Affirmation that the record-based claim was precluded from collateral review by CPL § 440.10(2)(c) because it could have been raised on direct appeal, but unjustifiably was not.[3] See Resp't Appendix W.

The Second Circuit has held that a state court's refusal to review a claim based on CPL § 440.10(2)(c) is a procedural default, which qualifies as a judgment on an "independent" state ground, Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003), and is considered to be an "adequate" and "firmly established and regularly followed" state procedural rule, Clark v. Perez, 510 F.3d 382, 391, 393 (2d Cir. 2008). Petitioner's ineffective assistance of counsel claim based on counsel's failure to properly preserve the legal sufficiency claim is therefore procedurally defaulted. Petitioner does not allege cause and prejudice for the default, nor has he attempted to avail himself of the miscarriage of justice exception. Thus, this portion of Petitioner's ineffective assistance of trial counsel claim is procedurally defaulted from review by this Court.

---

[3]

In a letter decision dated July 27, 2010, the Monroe County Supreme Court denied Petitioner's motion "in its entirety for the reasons set forth in the opposing affirmation of Assistant District County Stephen X. O'Brien, Esq., dated July 6, 2010." Resp't Appendix W. The court also determined that the claim was meritless. Id.

**(B)  Petitioner's Ineffective Assistance of Trial Counsel Claim Related to Counsel's Alleged Failure to Object to, or Move for Sanctions for, the Prosecution's Failure to Disclose Certain Materials from the GPD is Meritless**

Petitioner argues, as he did in his CPL § 440.10 motion, that he received ineffective assistance of counsel because counsel failed to object to, or move for sanctions for, the prosecution's alleged failure to disclose certain materials from the GPD related to the collection of biological evidence and technician functions. See Am. Pet. at 11, ¶¶ 38-40.  The Monroe County Supreme Court denied this claim, adopting the reasoning of the People in its Answering Affirmation that the claim lacked merit.[4]  See Resp't Appendix W.  Because this claim was adjudicated on the merits, the AEDPA applies.   Under that standard, Petitioner's claim is meritless.

To establish ineffective assistance of counsel, a petitioner must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  "First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."   Id. at 687.  Second, the petitioner must show that counsel's deficient performance prejudiced his defense, id. at 692,

---

[4]

The Monroe County Supreme Court also found as follows:  "[a]dditionally, trial counsel was not ineffective for failing to obtain laboratory protocols. Further, Defendant failed to establish that the protocols constituted Brady materials."  (citations omitted).  Resp't Appendix W.

-14-

which requires proving that, "but for" counsel's errors, there was a reasonable probability that the outcome of the proceeding would have been different.  Id. at 694.

The Strickland standard on direct appeal is already "highly deferential," 466 U.S. at 689, but in the context of a federal habeas proceeding under AEDPA, the habeas court must apply a "doubly deferential judicial review" to a state court's decision on ineffectiveness claims.  Knowles v. Mirzayance, 556 U.S. 111 (2009).  Where, as here, the state court has adjudicated the merits of the petitioner's claim, and 28 U.S.C. § 2254(d)(1) applies, "the question is not whether counsel's actions were reasonable," but instead "is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Harrington v. Richter, 131 S. Ct. 770, 788 (2011).

In this case, the underlying disclosure/Brady claim (see discussion infra at section V, 3) is meritless, and thus counsel cannot be faulted for failing to object to, or move for sanctions for, what amounts to a meritless issue.  Moreover, Petitioner has not alleged prejudice.  Accordingly, the state court's adjudication of this claim did not contravene or unreasonably apply Strickland. The claim is meritless and is therefore denied.

In sum, Petitioner's ineffective assistance of counsel claim provides no basis for habeas relief, and the claim is denied in its entirety.

3.   **Petitioner's <u>Brady</u> Claim is Meritless**

Petitioner argues, as he did in his CPL § 440.10 motion, that "[he] was denied his fourteenth amendment due process rights to a fair trial by reason of the prosecution's violation of <u>Brady v. Maryland</u>." (alterations in original).   Am. Pet., Ground Three. Specifically, he claims that the prosecution failed to disclose certain written protocols/guidelines of the GPD related to the proper collection of DNA evidence and technician functions, namely the "Gates Police Department General Order 457-91, Technician Functions" and GPD "Training Bulletin 2-99, Guidelines for the Collection of Biological Evidence."   Am. Pet. at p 12, ¶¶ 42-43; <u>see also</u> Resp't Appendix T.[5]   Because this claim was adjudicated on the merits, the AEDPA applies.   Under that standard, Petitioner's claim is meritless.

Under <u>Brady</u>, 373 U.S. at 87, prosecutors must disclose material evidence that has exculpatory or impeachment value.   There are thus three elements of a true <u>Brady</u> violation: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued."   <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).   Suppressed evidence is deemed

---

[5]

Petitioner does not specifically identify in the habeas petition the documents he faults the prosecution for failing to disclose prior to trial. However, Petitioner appears to be raising the same claim he raised in his CPL § 440.10 motion, in which he attached the aforementioned documents thereto as Exhibits J and K in support of his motion.

"material," and prejudice will be found, if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 682 (1985).

In this case, Petitioner's Brady claim fails because he has not and cannot establish how or in what way the evidence at issue was favorable to his defense either because it had exculpatory or impeachment value. The particular documents Petitioner faults the prosecution for failing to turn over to the defense prior to trial are manual-like documents used by the GPD and relate only generally to the collection of evidence. See Resp't Appendix T at Exhibits J, K. Despite Petitioner's conclusory assertion that the materials in question were "clearly exculpatory," said materials contain absolutely no evidence or information that relates to Petitioner's case, let alone exculpates him. See Am. Pet. at p 12, ¶ 45. Thus, it cannot be said that there is a reasonable probability that, had the materials in question –– which did not pertain to Petitioner's case and relate only tangentially to the blood sample collected from the scene of the crime in Petitioner's case –– been disclosed to the defense, the result of the proceeding would have been different. Moreover, the Court notes that the chain of custody issue related to the particular blood sample collected in Petitioner's case was contested at trial, such that the relevant facts surrounding the issue were already before the jury.

-17-

Accordingly, Petitioner's claim is meritless.  The state court's adjudication of this claim was neither contrary to nor unreasonable application of <u>Brady</u>.  The claim provides no basis for habeas relief and is therefore denied.

**4.   Petitioner's Claim that he was Denied his Due Process Right to a "Full and Fair Direct Appeal" is Unexhausted and Meritless**

Petitioner asserts that "[he] was denied his Fourteenth Amendment due process rights to a full and fair direct appeal when the respondent misstated the trial evidence."  Am. Pet., Ground Four.  To the extent Petitioner raises this issue as a stand-alone claim for the first time in the habeas petition, it is unexhausted. Petitioner's failure to exhaust the due process claim, however, is not fatal to this Court's disposition of it on the merits.  Because the Court finds the claim to be wholly meritless,[6] it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust.  <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Pratt v. Greiner</u>, 306 F.3d 1190, 1197 (2d Cir. 2002).

As a general matter, there is no right under the federal constitution that guarantees appellate review of state criminal

---

[6]
The habeas statute does not articulate a standard for denying a petition containing unexhausted claims on the merits, and neither the Supreme Court nor the Second Circuit has established one. The various formulations suggested by district courts in the Second Circuit share "the common thread of disposing of unexhausted claims that are unquestionably meritless." <u>Keating v. New York</u>, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010) (citing <u>Williams v. Artus</u>, 691 F. Supp.2d 515, 526-27 (S.D.N.Y. 2010) (relying upon 28 U.S.C. § 2254(b)(2) where unexhausted claims were "plainly meritless"); <u>Robinson v. Phillips</u>, No. 04-CV-3446 (FB), 2009 U.S. Dist. LEXIS 99417, 2009 WL 3459479, at *1 (E.D.N.Y. Oct. 23, 2009) (relying upon 28 U.S.C. § 2254(b)(2) where unexhausted claims were "patently frivolous")).

convictions.  See Evitts v. Lucey, 469 U.S. 387, 393 (1985).  But "if a State has created appellate courts as an integral part of the system for finally adjudicating the guilt or innocence of a defendant, the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution."  Id. (internal quotation marks, alterations, and citation omitted).  New York law provides that "a defendant has a fundamental right to appellate review of a criminal conviction." People v. Yavru-Sakuk, 98 N.Y.2d 56, 59 (2002).

Here, there is nothing in the record -- including the manner in which the People represented the facts of the case in its brief to the Appellate Division -- that suggests that Petitioner was deprived of meaningful appellate review.  Petitioner claims that the People misstated that "'expert testimony establishes that the tire tracks were consistent only with the tires on defendant's van.'"  Am. Pet. at 13, ¶ 47.  He maintains that this misstatement was prejudicial "in that it left the reviewing court with the understanding that, in addition to the [DNA evidence] there was other physical evidence connecting him to the crime scene when in fact there was not."  Id. at ¶ 48.  This claim is belied by the record, which reflects that the People's recitation of the facts in its appellate brief accurately summarized the testimony of Harvey VanHoven, the Director of the Monroe County Public Safety Laboratory, who testified for the prosecution as an expert in the

field of trace analysis.   T.T. 774-789.   On direct examination, VanHoven testified that he examined the tire tracks from the scene of the crime and compared them against the tires that were submitted to the laboratory in conjunction with the case. T.T. 781-782.   Based on his training, experience, and examination of the tire tracks and the tires in this particular case, he concluded that the tires were "Uniroyal Laredo AWP" tires and that "of the forty-five hundred or so tires that [he] reviewed in the [tire guide] catalogue, that was the only set of tires that had [the] type of tread wear impression [from the scene of the crime]." T.T. 788-789.   On cross-examination, defense counsel called into question VanHoven's conclusion.   T.T. 794-796.   However, on re-direct, the prosecutor rehabilitated VanHoven, specifically employing a line of questioning that clarified VanHoven's testimony on cross-examination and confirmed his direct testimony.   First, the prosecutor asked VanHoven, "[w]ith regard to the tire impressions, would it be fair to say that you can't say that one of those particular tires, that exact tire made the impression that you saw in the photograph in the snow?"   T.T. 801.   VanHoven answered in the affirmative.   The prosecutor then asked VanHoven, "[w]ould it also be fair to say that in your opinion that brand of tire, the Uniroyal Laredo was consistent with the impression in the snow?" T.T. 801-802.   VanHoven again answered in the affirmative. And, as a final question, the prosecutor asked VanHoven, "would it

be fair to say of the forty-five hundred other types of tires that you looked at, you didn't find one other tire that was consistent with that impression that you saw in the snow?" T.T. 802.  Again VanHoven responded in the affirmative.

Accordingly, because both parties submitted comprehensive appellate briefs that were true to the record and that persuasively advocated their respective positions, Petitioner's due process claim is meritless and provides no basis for habeas relief.  The claim is therefore denied.

## 5. Petitioner's Ineffective Assistance of Appellate Counsel is Partially Procedurally Defaulted and Partially Meritless

Petitioner argues that he received ineffective assistance of appellate counsel because appellate counsel failed to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to:  properly preserve Petitioner's argument that the evidence was legally insufficient to support his conviction for depraved indifference murder; and to object to, or to move for sanctions for, the prosecution's alleged failure to disclose the GPD materials related to evidence collection and technician functions discussed *supra* at section V, 3.  See Am. Pet., Ground Five.  As discussed below, this claim does not warrant habeas relief.

**(A)  Petitioner's Ineffective Assistance of Appellate Counsel Claim is Partially Unexhausted But Deemed Exhausted and Procedurally Defaulted**

Petitioner claims, as he did in his coram nobis application, that he received ineffective assistance of appellate counsel because appellate counsel failed to raise an ineffective of assistance of trial counsel claim based on trial counsel's failure to properly preserve Petitioner's argument that the evidence was legally insufficient to support his conviction for depraved indifference murder.  See Am. Pet. at 14, ¶¶ 50-54.

As discussed above, a federal court may not grant habeas relief "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254 (b)(1)(A).  Here, Petitioner raised this claim in his coram nobis application, but he failed to seek leave to appeal the Appellate Division's denial of his motion.  Consequently, the claim remains unexhausted.  See Castro v. Fisher, No. 04 Civ.346 DLC, 2004 U.S. Dist. LEXIS 22527, 2004 WL 2525876, at *8 (S.D.N.Y. Nov. 8, 2004) (finding habeas claim unexhausted where Petitioner failed to seek leave to appeal denial of coram nobis motion); see also Jones v. Artus, 615 F. Supp. 2d 77, 80 (W.D.N.Y. 2009) ("Indeed [petitioner's] coram nobis application would not have been fully exhausted had he not sought leave to appeal from the New York Court of Appeals.") (citing Castro).

The Court, however, deems the claim exhausted but procedurally defaulted because the time for seeking leave to appeal to the New York Court of Appeals has expired.  See CPL § 460.10(5)(a) (New York law allows thirty days from a party's receipt of an appellate order to seek a leave of appeal from that order).  Petitioner has not alleged cause and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a miscarriage of justice.

Accordingly, this portion of Petitioner's ineffective assistance of appellate counsel claim is procedurally defaulted from habeas review and is denied on this basis.

**(B)  The Remaining Portion of Petitioner's Ineffective Assistance of Appellate Counsel Claim is Unexhausted and Meritless**

Petitioner argues appellate counsel was ineffective because he failed to challenge trial counsel's failure to object to the alleged Brady violation and/or seek sanctions.  See Am. Pet. at 15-16, ¶¶ 55-59.  Petitioner did not raise this particular claim in his coram nobis application, and, to the extent he raises it for the first time in the habeas petition, the claim is unexhausted.  Because the claim is meritless, however, the Court denies it on the merits pursuant to 28 U.S.C. § 2254(b)(2).

An ineffective assistance of appellate counsel claim is governed by the standard in Strickland.  See Bunkley v. Meachum, 68

-23-

F.3d 1518, 1521 (2d Cir. 1995) (adopting <u>Strickland</u> test for ineffective appellate counsel claims).  Under this standard, "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." <u>Mayo v. Henderson</u>, 13 F.3d 528, 533 (2d Cir. 1994).  Petitioner cannot meet this standard.

As discussed *supra* at section V, 3, the <u>Brady</u> claim underlying this claim is meritless.  Thus, Petitioner's claim regarding the performance of his appellate counsel with respect thereto is similarly without merit. <u>See</u> <u>United States v. Arena</u>, 180 F.3d 380, 396 (2d Cir. 1999) (noting that "[f]ailure to make a meritless argument does not amount to ineffective assistance").  Accordingly, this portion of Petitioner's ineffective assistance of appellate counsel claim is meritless.

In sum, Petitioner's ineffective assistance of appellate counsel claim does not warrant habeas relief and is denied in its entirety.

## VI.  Conclusion

For the reasons stated above, the amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of

appealability.   See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).   The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.   Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     November 13, 2012
           Rochester, New York